**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ERIN RAE BEIGHLEY,

        Plaintiff,

                                                          Case No. 3:16-cv-850-J-JRK

vs.

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

        Defendant.
_____/

## **OPINION AND ORDER**[2]

### **I. Status**

Erin Rae Beighley ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of psoriatic arthritis, scoliosis, fibromyalgia, spondylitis, degenerative disc disease, bipolar disorder, and "severe back pain." Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed October 4, 2016, at 49, 60, 73, 84, 229 (emphasis omitted). On November 2, 2011, Plaintiff filed applications for DIB and SSI, alleging an onset of disability date of June 10, 2010. Tr. at 49 (DIB), 60 (SSI). Plaintiff's applications were

---

    [1]     Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    [2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed October 4, 2016; Reference Order (Doc. No. 15), entered October 5, 2016.

denied initially, Tr. at 49-59, 72, 97-102 (DIB); Tr. at 60-70, 71, 103-09 (SSI), and on reconsideration, Tr. at 73-83, 95, 113-18 (DIB); Tr. at 84-94, 96, 119-24 (SSI).

On October 10, 2013, an Administrative Law Judge ("ALJ") held a hearing at which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 24-48. On October 24, 2013, the ALJ issued a decision finding Plaintiff disabled through the date of the decision. Tr. at 16-22. On December 16, 2013, the Appeals Council ("AC") sent Plaintiff a letter notifying Plaintiff that the AC was reviewing the ALJ's decision because "[it] found that the [D]ecision is not supported by substantial evidence." Tr. at 172; see Tr. 172-78. The letter advised Plaintiff that the AC planned to issue a decision finding Plaintiff not disabled. Tr. at 173.

On April 22, 2014, the AC reversed the ALJ's finding that the Plaintiff was disabled and issued a decision that became the final decision of the Commissioner.[3] Tr. at 4-9. Plaintiff timely appealed the AC's decision to the United States District Court for the Middle District of Florida.[4] On December 8, 2015, the Court reversed and remanded the decision to the Commissioner. Tr. at 532-39. On April 25, 2016, on remand, the AC again found Plaintiff not disabled through the date of the ALJ's original decision, and issued a Decision that became the final decision of the Commissioner. Tr. at 521-28. On June 28, 2016,

---

[3] "[I]f the [AC] grants review of a claim, then the decision that the [AC] issues is the Commissioner's final decision." Sims v. Apfel, 530 U.S. 103, 106-07 (2000) (citing 20 C.F.R §§ 404.900(a)(4)-(5), 404.955, 404.981, 422.210(a)).

[4] See Beighley v. Colvin, No. 3:14-CV-720-J-MCR, 2015 WL 8123870 (M.D. Fla. Dec. 8, 2015).

Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal: (1) "[w]hether the Commissioner erred in determining that [Plaintiff] has the residual functional capacity [("RFC")] to perform light work after providing more weight to the opinions of non-examining state agency physicians than any examining or treating physician, and failing to adequately consider all of the pertinent evidence in the record"; and (2) "[w]hether the Commissioner erred in determining that [Plaintiff] has the [RFC] to perform light work after failing to adequately assess [Plaintiff's] credibility when she suffered from pain caused from psoriatic arthritis and a back condition." Plaintiff's Brief Addressing the Merits of Appeal (Doc. No. 17; "Pl.'s Brief"), filed December 5, 2016, at 2-3, 11-21 (argument as to first issue), 22-25 (argument as to second issue). On January 31, 2017, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing the issues raised by Plaintiff. After a thorough review of the entire record and consideration of the parties' respective filings, the undersigned finds the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

## **II. The AC's Decision**

When determining whether an individual is disabled,[5] an ALJ, or the AC, must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in

---

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, on remand, the AC followed the five-step sequential inquiry in the Decision. See Tr. at 526-28. At step one, the AC determined that "[Plaintiff] has not engaged in substantial gainful activity since June 10, 2010 [(the alleged onset date)]." Tr. at 527 (citations omitted). At step two, the AC found that "[Plaintiff] has the following severe impairments: psoriatic arthritis, tuberculosis, disorders of the spine, fibromyalgia, and obesity." Tr. at 527 (citations omitted). At step three, the AC ascertained that "[Plaintiff] does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 527 (citation omitted).

The AC determined that Plaintiff has the following RFC: "[Plaintiff can] perform the full range of the work at the light exertional level." Tr. at 527 (citation omitted). At step four, the AC found "[Plaintiff] is unable to perform any past relevant work because the physical demands of those jobs exceeded [Plaintiff's RFC] for a full range of light work." Tr. at 527 (citations omitted).

At step five, after considering Plaintiff's age ("32 years old, which is defined as a younger individual"), education ("a high school education"), work experience, and RFC, the

ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] could perform during the period at issue." Tr. at 527-28 (citations omitted). The AC concluded that "[Plaintiff was] not disabled . . . at any time from her alleged onset date, June 10, 2010, through the date of the [ALJ's] decision . . . ." Tr. at 528.

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

**IV. Discussion**

As indicated above, Plaintiff raises two issues before this Court. The first concerns the AC's assessment of the medical opinions, and the second concerns the AC's basis for the credibility finding. See Pl.'s Brief at 11-25. Two observations are critical in addressing these issues. First, the ALJ's decision reflects that the ALJ's finding of disability was mostly based on Plaintiff's "limited range of daily activities," and Plaintiff's inability to take Enbrel (a medication that helps relieve Plaintiff's pain) due to its incompatibility with her tuberculosis medication. See Tr. at 20. Second, in disagreeing with the ALJ's decision, the AC partly relied on Plaintiff's ability to perform certain activities of daily living but, in doing so, failed to consider the record as a whole, including activities Plaintiff is unable to perform and the fact that Plaintiff stopped taking Enbrel. See Tr. at 524-25. This affected both the AC's credibility determination and the AC's assessment of the medical opinions.

In addressing the issues in detail, the undersigned first sets out the applicable law. Then, the undersigned discusses the AC's credibility determination, followed by the AC's assessment of the medical opinions.

**A. Applicable Law**

To establish a disability based on testimony of pain or other subjective symptoms, a claimant must satisfy two parts of a three-part test showing: (1) evidence of any underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged subjective symptoms; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed subjective symptoms. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir.

1991) (stating that "the standard also applies to complaints of subjective symptoms other than pain")). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"[C]redibility determinations are the province of the [administrative judge]." Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). The administrative judge "must articulate explicit and adequate reasons" for finding a claimant "not credible." Wilson, 284 F.3d at 1225. "When evaluating a claimant's subjective symptoms, the [administrative judge] must consider things such as (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). After considering the claimant's subjective complaints, "the [administrative judge] may reject them as not credible, and that determination will be reviewed for substantial evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

In discussing the AC's power to review an ALJ's credibility determination, the Eleventh Circuit has held:

> [T]he [AC] has the power to reject an ALJ's credibility findings, but in determining whether there is substantial evidence to support the decision of the [AC], a federal court will consider the record as a whole, including, inter alia, the ALJ's credibility findings and the reasons those findings were rejected by the [AC]. In order to permit meaningful review, . . . the [AC] should ordinarily reject the ALJ's credibility findings expressly and state the reasons for its conclusion. The [AC's] rejection of the credibility findings in light of the stated

reasons must, of course, be supported by substantial evidence on the record as a whole.

Parker v. Bowen, 788 F.2d 1512, 1521-22 (11th Cir. 1986).

The Regulations establish a "hierarchy" among medical opinions[6] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[7] the Regulations instruct administrative judges how to properly weigh such a medical opinion. See 20 C.F.R.

---

[6] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[7] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

-8-

§ 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the administrative judge must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an administrative judge concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v.

Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted).

An administrative judge is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the [administrative judge] is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the [administrative judge] must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore, 405 F.3d 1212; Lewis, 125 F.3d at 1440. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

## B. Credibility Determination

Plaintiff argues that "the Commissioner did not adequately assess [Plaintiff's] credibility, which was particularly important in this case since [Plaintiff's] main issue is that [sic] pain caused from her psoriatic arthritis and back condition." Pl.'s Brief at 24. According to Plaintiff, "[the AC's] credibility determination is . . . nothing more than boiler plate type language, and does not offer enough reasoning to support the Commissioner's determination that [Plaintiff] is not credible." Id. Responding, Defendant contends that "the [AC] gave ample reasons . . . for reaching its conclusion that Plaintiff's subjective complaints were not entirely

-10-

supported." Def.'s Mem. at 21 (citations omitted). Based upon a review of the ALJ's Decision, the AC's Decision, and the administrative record, the undersigned is unable to determine whether the AC's credibility finding is supported by substantial evidence because the AC failed to consider certain evidence regarding Plaintiff's activities of daily living, as well as the significant change in Plaintiff's medication and its effect on Plaintiff's pain.

As noted above, the starting point for this Court's review is the ALJ's credibility determination. See Parker, 788 F.2d at 1521-22. Before making his credibility finding, the ALJ observed the following:

> During the hearing, [Plaintiff] described a limited range of daily activities, noting that she needs assistance on a regular basis due to frequent flares. The treatment notes confirm that [Plaintiff] has had a sporadic response to prescribed medications. [Plaintiff's] course of treatment has been complicated due to the incompatibility of her tuberculosis treatment with her treatment for psoriatic arthritis.

Tr. at 20 (citation omitted). The ALJ then found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [her] symptoms are generally credible." Tr. at 20. The ALJ recognized that Plaintiff was not then able to take Enbrel (the arthritis medication) because it was incompatible with her then-current tuberculosis medication. The ALJ noted, however, that "due to the efficacy of Enbrel in managing [Plaintiff's] symptoms [when she is able to take it], a continuing disability review [was] recommended in [twenty four] months." Tr. at 20.

The AC reversed the ALJ's credibility finding and found that "[Plaintiff's] statements regarding the intensity, persistence, and limiting effects of her impairments during the period at issue are only partially supported by the evidence in the record, as there is contradictory clinical evidence, opinion evidence, self-reported levels of activity, and response to

-11-

treatment." Tr. at 524. In support of this finding, the AC relied partly on Plaintiff's activities of daily living:

> [I]n January 2012, [Plaintiff] advised Dr. [Gathline] Etienne that she was independent in her activities of daily living, and in February 2012, she indicated to Dr. [Janet] Humphreys that she could care for her own personal needs. At the hearing, while [Plaintiff] alleged disabling pain, she also testified that she could do housework, cook, and vacuum. In addition, she testified that she was able to care for her then [thirteen]-month old child during the day, shop at the grocery store once per week, and drive her two other children to and from school [five] days per week and to their weekly sports activities.

Tr. at 524 (citations omitted). The AC also noted that "treatment notes consistently indicated that [Plaintiff] was doing better on E[n]brel and/or had pain once off E[n]brel." Tr. at 524 (citations omitted).

The Eleventh Circuit has indicated: "[W]e [do not] believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability . . . ." Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997). When considering daily activities, the administrative judge must consider the record as a whole. See Parker, 793 F.2d at 1180 (holding AC erred in finding that the plaintiff's "daily activities and her ability to care for her personal needs have not been significantly affected" because it "ignored other evidence that her daily activities have been significantly affected"). Here, the AC partly relied on Plaintiff's reported daily activities when making its credibility determination, and when doing so, it ignored various evidence that her daily activities have been significantly affected, similar to the Plaintiff in Parker.

The AC ignored several aspects of Plaintiff's testimony about daily activities. At the hearing, when the ALJ asked Plaintiff whether she could do housework, she answered: "Not as often as I should," and she testified she did not do laundry. Tr. at 32. She testified she

cooked, but that she did not do the dishes nor make the bed. Tr. at 32. She testified she vacuumed, but that she "[v]ery rarely" took out the trash. Tr. at 32-33. When asked how often she went to the grocery store, she answered: "At least once a week for milk or bread, but the long hauls, you know, where you really load the house up, maybe once every other month and someone always goes with me, my mom or my husband." Tr. at 34-35. When testifying about taking care of her thirteen-month-old child, she indicated that "[s]ome days [her] mother has to come help . . . or . . . come take him over to her house for a little bit so [Plaintiff] can just rest." Tr. at 39. According to Plaintiff, "[Plaintiff's] husband has actually had to call in to work to stay home . . . on several occasions." Tr. at 39. Plaintiff testified she has a "very difficult time" buttoning buttons and fastening zippers, and that "[her children] have to help each other," or, if her husband is home, she asks him for help. Tr. at 41. When asked whether she is able to open a jar, she testified that "mostly [she has] to get help to open anything." Tr. at 42.

The AC also did not mention Plaintiff's testimony about her ability to stand, walk, and sit. Plaintiff testified she can "walk slowly at [her] own pace, if there's a wall or a countertop or something . . . [she] can probably get a quarter of a mile before [she has] to stop." Tr. at 40. She also stated that "[s]tanding tends to be more difficult for [her] than walking," and that she can stand "probably ten minutes before [she] need[s] to sit down." Tr. at 41. With regard to sitting, she testified that "[she] can sit for a couple of hours, but mostly [she] lay[s], because even . . . sitting hurts [her] back and [her] hips and her feet swell . . . ." Tr. at 41. She also testified she was prescribed a cane, Tr. at 40, which was ignored by the AC.

As noted, the AC also relied on certain statements Plaintiff made to Dr. Humphreys and Dr. Etienne in discrediting Plaintiff. While the AC indicated Plaintiff told Dr. Humphreys she "could care for her own needs," Tr. at 524, the AC failed to recognize that on the same day, she also told Dr. Humphreys that "[s]he is able to shop with her mother's assistance[; s]he can cook, but tends to neglect the housekeeping[; and s]he typically spends her days in bed, sleeping, watching television, and reading." Tr. at 346-47. The AC noted that Plaintiff told Dr. Etienne she was "independent with her activities of daily living," Tr. at 524, but the AC did not mention that she also told the doctor that she "[t]ried obtaining a nursing degree but health limited completion of [the] degree." Tr. at 340. Further, while the AC noted Plaintiff told Dr. Humphreys she had a psoriaric arthritis flare in 2009 and worked as a corrections officer until June 2010 "despite this flare-up," Tr. at 524, Plaintiff also told Dr. Humphreys that "[s]he left her last job of nine years as a corrections officer in June 2010 due to her pain," and that "[s]he went back to college for two semesters, but dropped due to her pain in June 2011." Tr. at 346.

Importantly, the AC's error in not considering the entire record regarding daily activities includes its failure to address the effects of Plaintiff's medication regimen on her ability to perform daily activities. The administrative transcript reflects that as of June 13, 2013, Plaintiff stopped taking Enbrel because she started treatment for tuberculosis. See Tr. 417. The AC, however, made no finding on how Plaintiff's ability to perform activities of daily living is affected when she is not taking Enbrel. Indeed, it is unclear whether the AC recognized that as of the date of the ALJ's decision, Plaintiff was unable to take Enbrel. The AC also disregarded the side effects Plaintiff experiences when she takes the tuberculosis

-14-

medication, which Plaintiff was taking as of the date of the ALJ's decision. See Tr. 38-40. At the hearing before the ALJ, Plaintiff testified that "Enbrel definitely helps" and that "[w]hen [she] can get back on that, . . . it will be great." Tr. at 38. She specifically stated that Enbrel "stops some of the inflammation, which helps [with] some of the pain," and she is "not as stiff" when she takes it. Tr. at 38. She indicated that, without Enbrel, "when [she] get[s] up in the mornings, [she is] very stiff," and "it takes [her] hours before [she] can move even close to what [she] used to be able to . . . ." Tr. at 38. With regard to the tuberculosis medicine, she stated: "It's really brutal stuff, makes me feel horrible. . . . I know if I take that medicine, I'm not going to get out of bed. It's horrible stuff." Tr. at 39-40.

In making its credibility finding, the AC erred in failing to consider all of Plaintiff's testimony regarding daily activities. This error is compounded by the AC's failure to address the effects of Plaintiff's then-current medication regimen on her daily activities. Thus, remand is required for reconsideration of Plaintiff's credibility, including her reports on daily activities, the effects of not taking Enbrel, and the side effects of the tuberculosis medication.

## C. Assessment of Medical Opinions

Plaintiff argues that "[t]he Commissioner erred in determining that [Plaintiff] has the [RFC] to perform light work after providing more weight to the opinions of non-examining state agency physicians than any examining or treating physician, and failing to adequately consider all of the pertinent evidence in the record." Pl.'s Brief at 11-12. Responding, Defendant contends that "the [AC] properly explained the weight it gave to the various medical opinions, clearly articulated its reasons, and did not err by giving the greater weight

to the opinion of a non-treating source over a treating and examining one." Def.'s Mem. at 16.

Dr. David Fanney treated Plaintiff primarily for psoriatic arthritis, fibromyalgia, "[g]eneralized osteoarthritis of multiple sites," and "intervertebral disc degeneration." See, e.g., Tr. at 302, 313. The administrative transcript contains treatment notes from Dr. Fanney spanning December 2, 2010 to August 12, 2013, and it reflects that Plaintiff had appointments with Dr. Fanney every one to two months. See Tr. at 300-313, 405-442, 447-64, 468-71. In a letter dated October 9, 2013, Dr. Fanney indicated, "[Plaintiff] suffers from pain in her hands, painful range of motion in both shoulders, [and] cervical spine and lumbar spine pain . . . ." Tr. at 512. He then opined that "[Plaintiff] is 100 [percent] disabled and unable to work due to her condition." Tr. at 512. The AC gave Dr. Fanney's opinion "little weight" because it "relates to an issue reserved to the Commissioner" and is "inconsistent with his own treatment records, which show essentially normal physical and mental functioning, as well as other clinical evidence in the file and [Plaintiff's] reported activities of daily living." Tr. at 525.

On January 21, 2012, Dr. Etienne conducted a consultative examination of Plaintiff and diagnosed her with psoriatic arthritis and thoracic spondylosis. Tr. at 340-44. Dr. Etienne opined that "[t]he combination of these . . . disease processes will limit [Plaintiff] from prolonged standing for more than [thirty] minutes without rest, or heavy lifting greater than [twenty pounds]." Tr. at 342. The AC gave Dr. Etienne's opinion "some weight" because "there is no evidence of poor stamina, weakness, joint dysfunction in the lower extremities or other similar impairment or symptom that would warrant limiting standing and walking to

-16-

no more than [thirty] minutes on a continuous basis." Tr. at 525. According to the AC, "such a recommendation is inconsistent with [Plaintiff's] own reported activities of daily living as discussed [in the AC's Decision]." Tr. at 525.

In assessing the opinions of Dr. Fanney and Dr. Etienne, the AC relied on Plaintiff's activities of daily living. As explained in detail above, it is not clear that the AC adequately considered Plaintiff's testimony and reports regarding her activities of daily living. Reconsideration of Plaintiff's credibility and activities of daily living will likely impact the AC's assessment of the medical opinions. Thus, on remand, the AC shall reconsider the medical opinions as well.

## V. Conclusion

For the foregoing reasons, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

    (A) Reconsider Plaintiff's credibility, including activities of daily living and the effects of her medication regimen;

    (B) Reconsider the medical opinions, stating with particularity the weight assigned to each opinion and the reasons for that weight; and

    (C) Take such other action as may be necessary to resolve this matter properly.

2. The Clerk be further directed to close the file.

3. Plaintiff's counsel be advised that, in the event benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set

forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on September 5, 2017.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of record